UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED:  10/8/2021 _____ | |

OFF-WHITE, LLC

                              Plaintiff,

            -against-

ALINS, ANTONY ARCHIBALD, CHAIRUIY,
CRAVELOOK, DORYN_LEB, DUOLU,
DWARM, DYMA_STORE, FANXIAOPENG,
HYPEBEAST CO., JIAHU MALL, KEITH
KNOWLES (STORE), KICKSIXSTORE,
KIWBOOD, LANFOO LANZHX,
LUQUANQUS, MIEDAING, NIS
INDUSTRIES, PAGCOME, QCOVER,
RADU'S STORE, REANYST, REAYOUS,
SAKA LAKA, SAWYUE,
SHENZHENSHIXUESHANHUANBAOKEJIY
OUXIANGONGSI, SUNNIYU, THE
SOPRANOS, and ZC OUTDOOR PRODUCTS,

                              Defendants.

19 Civ. 9593 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Off-White LLC, moves by order to show cause for a default judgment under

Federal Rule of Civil Procedure 55 and Local Civil Rule 55.2, ECF No. 31, in this action for

trademark infringement, counterfeiting, and related claims, against Defendants, Compl., ECF

No. 9. Plaintiff also requests a permanent injunction. ECF No. 31. For the reasons stated

below, Plaintiff's motion for default judgment is GRANTED, and Plaintiff's motion for a

permanent injunction is GRANTED as modified below.

I.      Background

On October 17, 2019, Plaintiff filed its complaint and application for a temporary

restraining order, alleging counts of infringement and counterfeiting of Plaintiff's federally

registered trademarks, infringement of Plaintiff's unregistered trademarks (registered and

unregistered trademarks together, the "Marks"), false designation of origin, passing off and

unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*., and common law unfair competition, in connection with Defendants' alleged online sale of goods including the Marks.  Compl. ¶ 1; ECF No. 14.  On October 18, 2019, the Court granted the temporary restraining order (the "TRO"), and authorized alternative forms of service.  ECF Nos. 3, 18.  On October 29 and 30, 2019, Plaintiff served the summons, complaint, and TRO and supporting documents on Defendants.  Scully Decl. ¶ 13, ECF No. 33; ECF No. 20.  On November 26, 2019, after no Defendants appeared at the order to show cause hearing, despite being served with the TRO through the alternative service authorized by the Court, the Court granted Plaintiff's preliminary injunction.  ECF No. 23.

On November 6, 2020, the Clerk of Court entered a certificate of default.  ECF No. 30. On November 20, 2020, Plaintiff moved by order to show cause for a default judgment under Federal Rule of Civil Procedure 55 and Local Civil Rule 55.2.  ECF No. 31.  On November 25, 2020, the Court issued an order directing Defendants to show cause why a default judgment should not be entered.  ECF No. 36.

On February 16, 2021, Plaintiff's counsel filed an affidavit stating that the following documents were served on all Defendants except Cravelook by the alternative service authorized in the order to show cause:

1. Order to show cause;
2. Plaintiff's memorandum of law in support of its motion for default judgment, ECF No. 32;
3. Declaration of Plaintiff's counsel, Brienne Scully (the "Scully Declaration"), with attached exhibits, ECF No. 33;
4. Declaration of Virgil Abloh, Plaintiff's founder and Creative Director, with attachments, ECF No. 34; and
5. Plaintiff's proposed default judgment (the "Proposed Judgment"), ECF No. 35.

ECF No. 38.

II.   Liability

All Defendants defaulted by failing to answer the complaint, otherwise defend this action, or respond to the Court's order to show cause.  Fed. R. Civ. P. 55(a); ECF No. 55-3. When a default occurs, the Court deems the well-pleaded factual allegations set forth in the complaint relating to liability as true.  *See Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Plaintiff alleges counts of trademark counterfeiting, in violation of 15 U.S.C. § 1114(1)(b); registered and unregistered trademark infringement, in violation of  15 U.S.C. §§ 1114 and 1125; false designation of origin, passing off, and unfair competition, in violation of 15 U.S.C. § 1125(a); and common law unfair competition.  Compl. ¶ 1.

Under the Lanham Act, counterfeiting and infringement of registered and unregistered trademarks require proving the same elements: that (1) "the plaintiff's mark is entitled to protection," and (2) "defendant's use of the mark is likely to cause consumers confusion[.]" *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13 Civ. 816, 2016 WL 11468565, at *3 (S.D.N.Y. Mar. 29, 2016).

Plaintiff demonstrates both elements here.  First, Plaintiff has submitted United States trademark registrations as evidence the registered Marks are protectible.  Compl. Ex. B; *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc*., 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (*i.e.* protectible).").  Plaintiff has also sufficiently demonstrated that the unregistered Marks are protectible as distinctive and having acquired secondary meaning.  *See Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 454 F.3d 108, 116 (2d Cir. 2006) ("A plaintiff can establish a mark as distinctive by showing that the mark is 'inherently

distinctive,' i.e., intrinsically capable of identifying its source, or by demonstrating that the mark has acquired 'secondary meaning.'" (citation omitted)).  Because the unregistered marks are either suggestive—not describing the product, but requiring the purchaser to use imagination to reach a conclusion about the nature of the goods—or fanciful—invented solely for use as a trademark—they are inherently distinctive.  *See* Compl. Ex. B at 32, 52 (showing the unregistered trademarks); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc*., 800 F. Supp. 2d 515, 525 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013).  Alternatively, the unregistered Marks have acquired secondary meaning.  *See* Compl. ¶¶ 10, 12, 14–19; *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc*., 696 F.3d 206, 226 (2d Cir. 2012) ("Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." (quotation marks and citation omitted)).

Second, although normally an analysis of consumer confusion is a fact-specific inquiry under the factors enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), where a "counterfeit" is involved—"a spurious mark which is identical with, or substantially indistinguishable from, a registered mark"—the Court need not undertake a factor-by-factor analysis under *Polaroid* "because counterfeits, by their very nature, cause confusion."  *Coach, Inc. v. Horizon Trading USA Inc*., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quotation marks and citations omitted).  Plaintiff has alleged that Defendants' marks are counterfeits.  Compl. ¶¶ 33, 36–38.  Accordingly, Plaintiff is entitled to judgment on its counterfeiting and infringement claims.

A plaintiff who has established its claim for trademark infringement under § 1114 has

similarly demonstrated its claim for false designation of origin, passing off, and unfair competition under § 1125. *Burberry Ltd. & Burberry USA v. Designers Imps., Inc.*, No. 07 Civ. 3997, 2010 WL 199906, at *7–8 (S.D.N.Y. Jan. 19, 2010). Accordingly, Plaintiff is also entitled to judgment on those claims.

Finally, Plaintiff is entitled to judgment on its state law unfair competition claim. To establish this claim, a plaintiff must allege (1) "misappropriation of the labors and expenditures of another," that is (2) "likely to cause confusion or to deceive purchasers as to the origin of the goods," and (3) "bad faith." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34–35 (2d Cir. 1995) (quotation marks and citation omitted). When there is a parallel Lanham Act claim, a plaintiff establishes a claim for common law unfair competition by stating their "Lanham Act claim coupled with a showing of bad faith or intent." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016) (citation omitted). "Use of a counterfeit mark creates a presumption of bad faith." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599 (S.D.N.Y. 2010). Because Plaintiff has made out a Lanham Act claim for use of counterfeit trademarks, it has met the state unfair competition elements as well.

Accordingly, Plaintiff has shown the Defendants' liability on its claims against every Defendant except Cravelook (the "Defaulting Defendants").[1]

### III.   Statutory Damages

To determine damages on a default judgment, a plaintiff bears the burden to "introduce sufficient evidence to establish the amount of damages with reasonable certainty." *RGI Brands*

---

[1] Because Cravelook was not served with the order to show cause and supporting documents, the Court declines to enter a default judgment against it at this time. ECF No. 38 ¶ 6; *Ideavillage Prod. Corp. v. OhMyGod 1*, No. 18 Civ. 9999, 2020 WL 6747033, at *3 (S.D.N.Y. Nov. 17, 2020).

*LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No 12 Civ. 1369, 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, No 12 Civ. 1369, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013).  The Court may grant damages on a default judgment based only on affidavits "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment."  *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 619 (S.D.N.Y. 2011) (alteration in original) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).  In other words, a court must be able to evaluate the fairness of the proposed damages award "based on admissible evidence."  *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, No. 14 Civ. 6911, 2016 WL 658310, at *3 (S.D.N.Y. Feb. 17, 2016) (citations omitted), *report and recommendation adopted*, No. 14 Civ. 6911, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016).

Plaintiff seeks statutory damages from Defaulting Defendants on its claims for trademark counterfeiting and infringement in amounts ranging from $75,000 to $500,000.  Abloh Decl. ¶¶ 9–11; Scully Decl. ¶¶ 8, 8 n.2.  The Lanham Act permits a plaintiff to opt to recover statutory damages in lieu of actual damages, of a minimum of $1,000 per counterfeit mark and a maximum of either $200,000 or, if the use of the counterfeit mark was "willful," $2,000,000, per counterfeit mark, as the Court considers "just."  15 U.S.C. § 1117(c).

Courts have wide discretion in determining the amount of statutory damages.  *See, e.g.*, *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  In making that determination, courts consider:

> (1) the expenses saved and the profits reaped by defendant; (2) the revenues lost by plaintiff; (3) the value of the copyright or mark; (4) the scale of defendant's infringement; (5) whether defendant's conduct was innocent or willful; (6) whether defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant and others.

*Ideavillage Prod. Corp. v. OhMyGod 1*, No. 18 Civ. 9999, 2020 WL 6747033, at *3 (S.D.N.Y. Nov. 17, 2020); *see also Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425 (S.D.N.Y. 2018).

Here, "[b]y virtue of the default, [the Defaulting Defendants'] infringement is deemed willful[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Further, the Defaulting Defendants' failure to appear has made determining their profits, and Plaintiff's lost revenues, near-impossible.  Abloh Decl. ¶¶ 6–8.  Plaintiff has further established the high value of the Marks, Compl. ¶¶ 12, 16–19, and the large scale of infringement, Scully Decl. ¶¶ 29–33.

Plaintiff requests awards of $75,000 from the Defaulting Defendants who, based on evidence gained from Amazon, sold fewer than 100 counterfeit products, $125,000 from the Defaulting Defendants who sold 100 to 250 products, $200,000 from the Defaulting Defendants who sold 250 to 500 products, $300,000 from those who sold 500 to 3,000 products, and $500,000 from the Defaulting Defendant who sold 67,599 products.  Scully Decl., Exhibit E, ECF No. 33-5.  Moreover, Plaintiff has established that the available discovery likely undercounts the number of products sold, as it is limited to one online storefront.  Scully. Decl. ¶ 33.  Other courts have granted Plaintiff and other similarly-situated plaintiffs equivalent awards.  *See Off-White LLC v. 5HK5584*, No. 19 Civ. 672, 2020 WL 3050552, at *1 (S.D.N.Y. June 8, 2020); *Ideavillage Prod. Corp. v. Aarhus*, No. 18 Civ. 2739, 2019 WL 2290514, at *9 (S.D.N.Y. May 7, 2019), *report and recommendation adopted*, No. 18 Civ. 2739, 2019 WL 2287726 (S.D.N.Y. May 28, 2019).  Accordingly, the Court finds that the statutory damages sought by Plaintiff are appropriate.  Post-judgment interest shall be awarded on these amounts pursuant to 28 U.S.C. § 1961.

IV.    <u>Injunctive Relief</u>

Plaintiff moves for a permanent injunction (1) prohibiting the Defaulting Defendants from further counterfeiting or infringing the Marks, (2) requiring the Defaulting Defendants to deliver to Plaintiff for destruction all infringing products, and (3) prohibiting third-party service providers and financial institutions from providing services to the Defaulting Defendants, or moving the Defaulting Defendants' assets or evidence related to the assets.  Proposed Judgment § III, ECF No. 35.  The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," 15 U.S.C. § 1116(a), which courts regularly use to grant injunctions on default, *Ideavillage Prod. Corp. v. OhMyGod 1*, 2020 WL 6747033, at *4 ("It is well-established that a court may grant a permanent injunction as part of a default judgment.").  Plaintiff must therefore demonstrate (1) the likelihood that it will suffer irreparable harm if an injunction is not granted; (2) whether remedies at law such as monetary damages are inadequate to compensate it for that harm; (3) the balance of hardships; and (4) whether the public interest would not be disserved by a permanent injunction.  *See Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010).

Plaintiff has established all these elements.  Plaintiff has alleged that the Defaulting Defendants' conduct has caused irreparable harm to its goodwill and reputation, Compl. ¶¶ 53, 66, and that the Defaulting Defendants' willful infringement and counterfeiting, along with their failure to appear in this action, demonstrates that they will continue this harm absent court order, *WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ. 9893, 2019 WL 1316106, at *5 (S.D.N.Y. Mar. 22, 2019).  Plaintiff's hardship is evident, and it is "axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product," *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted); accordingly, the balance of hardships weighs in favor of

8

Plaintiff.  Finally, "[a] permanent injunction would also promote the public interest in freedom from deception in the marketing of consumer goods."  *Ideavillage Prod. Corp. v. OhMyGod 1*, 2020 WL 6747033, at *4.

However, the proposed injunction is too broad in several respects.  First, the injunction seeks to bind "officers, agents, servants, employees, successors and assigns and all persons acting in concert with or under the direction of Defaulting Defendants (regardless of whether located in the United States or abroad), who receive actual notice of" the judgment.  Proposed Judgment § III(2).  Federal Rule of Civil Procedure 65(d)(2) permits courts to bind non-parties "only" if they are "the parties' officers, agents, servants, employees, and attorneys [and] other persons who are in active concert or participation with" those specifically named in Rule 65(d)(2).  Fed. R. Civ. P. 65(d)(2).  As other courts have observed, therefore, the language of Proposed Judgment § III(2) is overbroad, and the Court will strike the reference to "successors and assigns," and add the word "active" before "concert" to track Rule 65(d)(2).  *See Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 379 (S.D.N.Y. 2020), *adhered to in relevant part on reconsideration*, No. 18 Civ. 1774, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020); *Allstar Mktg. Grp., LLC v. AFACAI*, No. 20 Civ. 8406, 2021 WL 2555636, at *3 (S.D.N.Y. June 22, 2021).

Moreover, Proposed Judgment §§ III(2)(F)(i) and (ii) are overbroad, as they require retention of documents not related to the sale of the counterfeit products at issue.  *See Spin Master Ltd.*, 463 F. Supp. 3d at 377–79.

Finally, Proposed Judgment §§ III(3) and (4), which seek to bind financial institutions and third party internet service providers, are overbroad.  The Court has no authority to enjoin third parties not before the Court who are not in active concert with the Defaulting Defendants.  *Spin Master Ltd.*, 463 F. Supp. 3d at 380–81 ("This [c]ourt cannot prejudge now—before

knowing the facts—whether any particular financial institution or third party service provider is necessarily and by definition an aider and abettor").  In addition, the Court will not, by freezing the Defaulting Defendants' accounts, grant Plaintiff rights to the assets in the accounts superior to those of other creditors with possibly equal or superior rights to those assets.  *Id.* at 381.  Nor will the Court enjoin the third party internet service providers from offering services unrelated to the products at issue here.  *Id.* at 381–82 (noting that such an injunction would not be "narrowly tailored to fit specific legal violations." (quoting *Victorinox AG v. B & F Sys., Inc.*, 709 F. App'x 44, 51 (2d Cir. 2017))); *Allstar Mktg. Grp., LLC*, 2021 WL 2555636, at *3–4.  Though the Court is sympathetic to the "the difficulty of policing counterfeiting operations, and the potentially salutary effect of a judicial order that completely terminates any future commercial operations of a counterfeiter as a sanction for its behavior," an overbroad injunction is not a "proportionate remedy" to the acts at issue here.  *Allstar Mktg. Grp., LLC* v. *158*, No. 18 Civ. 4101, 2019 WL 8509382, at *2 (S.D.N.Y. Mar. 12, 2019), *reconsideration denied*, No. 18 Civ. 4101, 2019 WL 3936879 (S.D.N.Y. Aug. 20, 2019).  Therefore, the Court will strike §§ III(3) and (4) from the Proposed Judgment.

Accordingly, Plaintiff's motion for a permanent injunction is GRANTED with the above modifications.

V.     Continuance of Pre-Judgement Asset Restraint

Plaintiff contends that, in light of the 30-day stay of execution of judgment required by Federal Rule of Civil Procedure 62(a), the Court should extend the pre-judgment asset restraint instituted by the TRO and preliminary injunction to prevent the Defaulting Defendants from having 30 days to hide their assets.  Pl. Mem. at 23–24, ECF No. 32.  However, the Court "has the power to order the execution of a judgment to occur before the close of this 30-day window."

*Allstar Mktg. Grp., LLC v. AFACAI*, 2021 WL 2555636, at *8.  The Court will do so here.  *Id.*;
*Allstar Mktg. Grp., LLC v. Bigbigdream320*, No. 19 Civ. 3182, 2020 WL 5836514, at *7
(S.D.N.Y. Sept. 30, 2020).  Accordingly, the Court dissolves the automatic 30-day stay imposed
by Rule 62 to allow for immediate enforcement of the judgment.  However, the Court will strike
Proposed Judgment § V.

VI.     Post-Judgment Asset Restraint and Transfer

Plaintiff further seeks a post-judgment asset restraint and transfer, either under Federal
Rules of Civil Procedure 64 and 65 and 15 U.S.C. § 1116(a), or alternatively, under Federal Rule
of Civil Procedure Rule 69 and state law.  Pl. Mem. at 15–23.

Courts that have considered the issue have determined that Plaintiff's post-judgment
relief is not available under Rules 64 and 65 and 15 U.S.C. § 1116(a).  *See Allstar Mktg. Grp.,
LLC v. AFACAI*, 2021 WL 2555636, at *5–7 (concluding that Rule 64 applies only to provisional
remedies, rather than final relief; that Rule 65 cannot be used to circumvent the more specific
Rule 69's provisions and cannot bind third parties not in active concert with Defendants, and that
§ 1116(a) does not govern the execution of a judgment); *Allstar Mktg. Grp., LLC v.
Bigbigdream320*, 2020 WL 5836514, at *7 ("Because the Court is not aware of any reasoned
authority providing for such relief, it adheres to its conclusion . . . that the only post-judgment
remedies available to [p]laintiff are those under Rule 69 and state law.") (emphasis omitted).

Therefore, any post-judgment relief available to Plaintiff is ruled by state law.  Fed. R.
Civ. P. 69 ("The procedure on execution . . . must accord with the procedure of the state where
the court is located[.]").  In New York, the applicable procedure is found in N.Y. C.P.L.R.
§§ 5222 and 5225.  Section 5222 provides that a judgment creditor may serve a restraining notice
upon any person or entity holding the property of the debtor, thereby prohibiting that person or

entity from transferring, selling, or destroying the property.  N.Y. C.P.L.R. § 5222.  Section 5225

provides that, for property not in the possession of the judgment debtor,

> Upon motion of the judgment creditor, upon notice to the judgment debtor, where
> it is shown that the judgment debtor is in possession or custody of money or other
> personal property in which he has an interest, the court shall order that the judgment
> debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to
> the judgment creditor and, if the amount to be so paid is insufficient to satisfy the
> judgment, to deliver any other personal property, or so much of it as is of sufficient
> value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(a).  Because relief here is proper under N.Y. C.P.L.R. § 5222, Plaintiff

may serve upon the Defaulting Defendants a restraining notice forbidding them to make or suffer

any sale, assignment, transfer or interference with any property in which they have an interest,

except as set forth in subsections (h) and (i) of Section 5222 of the C.P.L.R.  *Allstar Mktg. Grp.,*

*LLC v. Bigbigdream320*, No. 2020 WL 5836514, at *7.  However, Plaintiff has not shown it has

given the Defaulting Defendants the proper notice required to be afforded relief under § 5225.

Moreover, § 5225 requires identification of a particular piece of property, not frozen assets

generally.  *Id.*  Therefore, the Court concludes that relief under § 5225 is not proper here, and

will strike § VI from the Proposed Judgment.  *Id.*

## CONCLUSION

For the reasons stated above, Plaintiff's motion for default judgment is GRANTED as to

all Defendants except for Cravelook, and DENIED without prejudice as to Cravelook.  The Rule

62 stay of execution is DISSOLVED.  The Court will enter a separate judgment reflecting the

modifications to the Proposed Judgment described in this order.

       SO ORDERED.

Dated: October 8, 2021
      New York, New York

                                  ANALISA TORRES
                          United States District Judge